## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TONYIA HARDIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:10-cv-01118-LJM-TAB |
| | ) | |
| CARRIER CORPORATION and | ) | |
| USW LOCAL 1999, | ) | |
| | ) | |
| Defendants. | ) | |

### Entry Discussing Motion for Summary Judgment

Tonyia Hardin alleges that she was discriminated against in her employment with Carrier Corporation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. ' 2000e-5. Hardin further alleges that she was fired in retaliation after previously having her job terminated and reinstated. Carrier seeks resolution of Hardin=s claims through the entry of summary judgment.

### I. Discussion

#### A.   Summary Judgment Standard

AAs stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.@ *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed.R.Civ.P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville,* 649 F.3d 526, 529 (7th Cir.2011). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). AIn evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.@ *Harney,* 526 F.3d at 1104. AOnly factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts

do not deter summary judgment, even when in dispute.@ *Id.* (internal citations omitted). AIt is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [s]he relies.@ *Id.* AIf the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [s]he would bear the burden of proof at trial, summary judgment must be granted to the moving party.@ *Id.* (internal quotation omitted).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

### B. Undisputed Facts

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Hardin as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Hardin worked for Carrier from August 2002 until May 2009, with the exception of a brief layoff from November 2002 to early 2003 and the time between August 2007 and September 2008 when her employment was terminated and later reinstated.

Carrier has an employee handbook ("Handbook"), which Hardin received. The Handbook contains Plant Rules governing the employment and conduct of Carrier's employees. One of these Plant Rules is Plant Rule 14, which prohibits the use of insulting or abusive language towards another employee. The Handbook provides that violating this rule is serious and "may subject an employee to immediate discharge without progressive discipline." Hardin was aware of Plant Rule 14 and understood that violating this Rule could result in termination.

Rejeana Pendleton ("Pendleton") is Carrier's Senior Labor Relations Manager. In 2009, Pendleton supervised Labor Relations Representative Kristen Abbott ("Abbott"). On May 9, 2009, Hardin was working a Saturday overtime shift and co-worker Arlene Florey ("Florey") was performing the duties of acting Team Lead for Hardin's assembly line. A disagreement then arose between Hardin and Florey, during which Hardin told Florey that she was going to "beat her ass."

That same day, Jeff Griffith ("Griffith"), a Plant Supervisor, sent Pendleton and Abbott an email, which appeared to memorialize an investigation he had conducted concerning the disagreement between Hardin and Florey. Based on Pendleton's and Abbott's review of Griffith's report, Pendleton and Abbott understood the following: On May 9, 2009, Florey was performing the duties of a Team Lead and Hardin was one of the employees on the production line for which Florey was serving as Team Lead. During that shift, Hardin approached Griffith and said she did not want to work her regularly scheduled job and wanted to speak to a Union representative about the issue. After Griffith went to get a Union representative for Hardin, Florey approached him. Florey told Griffith that Hardin had used threatening language toward her. Griffith then spoke with other employees in the area who had witnessed the altercation between Hardin and Florey. These employees told Griffith that Hardin had in fact made the statements that Florey had reported to Griffith. Griffith also spoke with two employees who had observed the altercation from a distance, both of whom told Griffith that Florey did not appear to instigate the altercation and that Hardin appeared to be the aggressor. Griffith then spoke to Hardin. Hardin told Griffith that Florey had tried to hit her and that Hardin had moved back to protect herself. Hardin did not tell Griffith that anything was said. Griffith had sent both Hardin and Florey home so that human resources could address the matter on May 11, 2009.

Based on their review of Griffith's May 9, 2009 correspondence, it appeared to both Pendleton and Abbott that a possible Plant Rule violation had occurred. Upon receiving a report of a possible Plant Rule violation, it is Carrier's practice for a Labor Relations Representative to investigate the potential rule violation and to report the results of that investigation to Pendleton, together with a recommendation concerning whether Carrier should impose disciplinary action, and if so, a recommendation for such action. With regard to the May 9, 2009 altercation, Abbott was the Labor Relations Representative responsible for conducting the investigation on behalf of Carrier and for making any recommendations to Pendleton based on the results of that investigation. Abbott was also provided with written statements concerning the events of May 9, 2009, from employees Norma Milam ("Milam"), Sandra Bright ("Bright"), and Linda Helton ("Helton"), all of whom were members of the Union.

From Abbott's review of Milam's, Bright's, and Helton's written statements, Abbott understood that: Milam witnessed Hardin become aggressive with Florey and use profanity towards her. In response, Florey appeared to be afraid Hardin would hit her so Florey put her hand up and backed away. Bright witnessed Hardin yelling and using profanity towards Florey, and Florey appeared to put her hand up to avoid being hit by Hardin. Helton heard Hardin yelling at Florey and saw Hardin advance toward Florey causing Florey to back away from Hardin. Based on her observations, Helton felt Hardin was a threat to Florey.

Then Abbott, Griffith, George Gann ("Gann"), (the Union President), Bennie Porter ("Porter"), (a Union Steward), and Allen Johnson ("Johnson"), (the Union Financial Secretary), all met with Florey. During this meeting, Florey told them that on May 9, 2009, she had told Hardin that she should do her assigned job, and

Hardin threatened Florey. Florey denied threatening Hardin or using any foul language, and provided Abbott with a written statement. That same day, Abbott, Griffith, Gann, Porter, and Johnson met with Hardin who told them that Florey had tried to hit her, and that Hardin told Florey she would "beat her ass." Abbott, Griffith, Gann, Porter, and Johnson then met with Milam, one of the reported eyewitnesses to the incident on May 9, 2009. Milam said that she witnessed Hardin threatening Florey after which Florey backed up. Based on the information obtained during the investigation, Abbott believed both that Hardin had used profanity with Florey and Hardin had been the aggressor. As a result, Abbott believed that Hardin violated Plant Rule 14 and suspended Hardin effective May 11, 2009 for her violation. Abbott provided Pendleton with a written summary of her May 11, 2009, investigation and recommended to Pendleton that she terminate Hardin's employment for violating Plant Rule 14.

Based on Pendleton's review of Abbott's and Griffith's investigation summaries, Pendleton believed the following: Two employees, Sandra Bright and Norma Milam, witnessed the incident between Hardin and Florey and reported that Hardin was the aggressor and had used profanity towards Florey. Two other employees, Dave Parliament and Linda Helton, observed the altercation and reported that Hardin appeared to be the aggressor. While Hardin maintained that Florey tried to hit her and denied threatening Florey, Hardin admitted to using profanity towards Florey and an eyewitness (Milam) had said that Florey just backed up and made no gestures towards Hardin. Abbott was recommending that Hardin's employment be terminated based on these events. Based on the information provided to Pendleton by both Griffith's and Abbott's investigations, Pendleton concluded that Hardin had violated Plant Rule 14 and Pendleton made the decision to terminate Hardin's employment. Her employment was terminated on May 19, 2009 for violating Plant Rule 14.

Hardin testified that her claims against Carrier are: Carrier terminated her employment due to race discrimination and in retaliation for being reinstated in September 2008. Hardin testified that Carrier terminated Hardin's employment because of her altercation with Florey. Hardin admits she has no knowledge of Carrier's investigation of the incident, or whether Carrier spoke to anyone about the incident, including Florey.

### C. Analysis

Hardin brings claims of racial discrimination and retaliation. She asserts that she was discriminated against because she was treated differently than Florey and that she was retaliated against for having previously won her job back after being fired. To successfully oppose Carrier=s motion for summary judgment, Hardin must either produce direct evidence of discrimination or retaliation or survive the burden-shifting test established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Direct evidence is evidence that, if believed by the trier-of-fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003). In short,

"[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal quotation omitted). There is no direct evidence that the Carrier decision-makers said or did anything indicating that the decision to terminate Hardin=s employment was based on her race or in retaliation for getting her job back. Accordingly, the burden-shifting method of analysis will be applied in this case. Under the indirect method of proof, Hardin must establish that: (1) she engaged in statutorily protected activity or is a member of a protected class, (2) [s]he performed [her] job according to the employer's legitimate expectations, (3) [s]he suffered a materially adverse employment action, and (4) [s]he was treated less favorably than similarly situated employees. *See Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 861-62 (7th Cir. 2005).

Hardin's case fails the second element of the burden-shifting analysis, that she was meeting Carrier's legitimate expectations. In fact, she admits that using insulting or abusive language violated Carrier's Plant Rule 14, that any violation of Plant Rule 14 could result in immediate termination, and that on May 9, 2009, she told Florey that she was going to "beat her ass."

In addition, Hardin has not shown that similarly-situated employees were treated more favorably than her, as required by the fourth prong of the burden-shifting analysis. To satisfy the fourth prong, a plaintiff must show that similarly situated employees were "comparable to the plaintiff in all *material* respects." *Crawford v. Ind. Harbor Belt R.R. Co.,* 461 F.3d 844, 846 (7th Cir.2006). "The similarly situated inquiry is a flexible, common-sense comparison based on 'substantial similarity' rather than a strict 'one-to-one mapping between employees,' but still requires 'enough common features between the individuals to allow [for] a meaningful comparison.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (quoting *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir.2007)). Thus, to evaluate whether two employees are directly comparable, courts consider all of the relevant factors, which most often include whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered the latter factors in making the personnel decision." *Abuelyaman v. Ill. State Univ.,* 667 F.3d 800, 810 (7th Cir.2011) (quoting *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 532 (7th Cir.2003)); *see also Bhat v. Accenture LLP*, 473 F. App'x 504, 506-07 (7th Cir. 2012) (employees were not substantially similar because Bhat did not show that they shared background experiences, supervisors, or types of projects, or that both of them engaged in similar conduct or received similar performance evaluations),

With respect to the fourth prong, Hardin testified at her deposition that no employees at Carrier were treated better than she was treated. However, she also alleges that Florey was treated better than her after their altercation. But Florey is not similarly situated to Hardin. First, Florey was performing the duties of a Team Lead at the time of the altercation. Hardin has never performed these duties. Instead, she has worked in a maintenance position and as an Associate B on the assembly line. In addition, as to their conduct during the May 9, 2009, incident,

**Pendleton believed based on the results of two investigations (including eyewitness reports of the altercation) that Hardin was the aggressor and had used profanity towards Florey, while Florey simply backed up and made no gestures toward Hardin. In her response to the motion for summary judgment, Hardin asserts that Florey attempted to hit her. However, Hardin does not provide any evidence to support this allegation and or evidence that Carrier's investigation revealed other than that Hardin was the aggressor.**

### II. Conclusion

**A**Without a *prima facie* case, the plaintiff cannot withstand summary judgment.@ *Hong v. Children's Memorial Hosp.,* **993 F.2d 1257, 1261 (7th Cir. 1993). Here, Hardin=s claims are not supported by evidence that establishes a** *prima facie* **case of racial discrimination or retaliation. In addition, Hardin has failed to show that the stated decision for terminating her employment was a pretext for retaliation or discrimination. Accordingly, Carrier=s motion for summary judgment [47] is granted. Hardin's claim against USW Local 1999 remains. No partial final judgment shall issue as to the claims resolved in this Entry.**

**IT IS SO ORDERED.**

Date: 09/26/2012

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

**Distribution:**

**All electronically registered counsel**

**Tonyia Hardin**
**3639 N. Illinois Street**
**Indianapolis, IN 46208**