# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TONYIA HARDIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:10-cv-01118-LJM-TAB |
| | ) | |
| CARRIER CORPORATION and | ) | |
| USW LOCAL 1999, | ) | |
| | ) | |
| Defendants. | ) | |

### Entry Discussing Motion for Summary Judgment

Plaintiff Tonyia Hardin, a former employee of Carrier Corporation ("Carrier") brings this lawsuit against Local 1999 ("Local 1999" or "Local Union") of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("the USW" or "the International Union") alleging that the Local Union violated Title VII of the Civil Rights Act of 1964 ("Title VII") by not arbitrating grievances to challenge her two terminations and allegedly retaliating against her. The Local Union seeks resolution of her claims through summary judgment.

## I. Discussion

### A. Summary Judgment Standard

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed.R.Civ.P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville,* 649 F.3d 526, 529 (7th Cir.2011). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In evaluating a motion for summary judgment, a court should draw all reasonable inferences from

undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party." *Harney,* 526 F.3d at 1104. "Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Id.* (internal citations omitted). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [s]he relies." *Id.* "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [s]he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Id.* (internal quotation omitted).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

### B.  Undisputed Facts

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Hardin as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

*Local 1999*

Local 1999 is a chartered amalgamated local union of the International Union that assists the USW in its representing, for collective bargaining purposes, employees of Carrier at its Indianapolis manufacturing facilities. For the past 15 years, James C. Adcock has been employed as an International Union Staff Representative by the USW. Adcock is responsible for negotiating and administering collective bargaining agreements ("CBAs") with Carrier, among other employers. Adcock is responsible for enforcing CBAs by: 1) processing employee grievances in the third and fourth steps of the four step grievance procedure under the CBA; 2) deciding, with input from the Local 1999 Grievance Committee, whether to settle or appeal such grievances to the fourth step, which is final, third party arbitration; and 3) serving as the USW's advocate in such arbitrations. For a number of years, Carrier and the USW have been parties to a series of CBAs, governing the hours, wages and terms and conditions of employment of Carrier employees in the USW bargaining unit. Carrier reserved, as an "exclusive function

of the management," the right to issue "reasonable rules and regulations for the conduct of employees and the enforcement thereof . . . together with the right to . . . discharge" employees. Carrier Plant Rules "of a more serious nature, which may subject an employee to immediate discharge without progressive discipline," include: "9. Walking off the job without authorization" and "14. Coercion, intimidation or use of insulting or abusive language toward another employee." Hardin acknowledged receiving those rules as part of her employee's handbook in 2002 and 2006.

### Hardin's 2007 Discharge

Hardin, who is African American, became a Carrier employee in the USW bargaining unit in August 2002. During her employment with Carrier, Hardin received several written warnings and discipline notices issued by Carrier for various Plant Rule violations, leading to her first employment termination, effective August 24, 2007, for her third violation of Plant Rule 9 for walking off the job or being out of her work area without authorization. Local 1999 filed a grievance challenging Hardin's August 24, 2007 termination. Consistent with his Grievance Procedure Step 3 responsibility, Adcock investigated and handled the processing of this grievance on behalf of the USW and Local 1999. In his investigation, Adcock learned that Hardin admitted that she did not have permission to leave work and that there were no extenuating facts to justify her walking off the job. He therefore concluded that the grievance did not have sufficient merit to pursue it to arbitration. Adcock did not take Hardin's race into account when considering her grievance. He handled Hardin's grievance as he handles all other grievances. In a letter dated September 24, 2007 and mailed via certified mail on September 25, 2007 that Hardin later signed for and received, Adcock informed Hardin that the USW had decided not to process her 2007 discharge grievance further and explained the reasons for that decision. With regard to her 2007 discharge grievance and USW Adcock's representation of her in connection with that grievance, Hardin testified that "he did a fine job." Hardin was reinstated by Carrier in September 2008. A reinstatement agreement was executed by Hardin and Carrier. Neither Local 1999 nor the USW participated in the reinstatement of Hardin or the execution of this agreement because she was reinstated outside of the grievance procedure.

### Hardin's 2009 Discharge

Hardin was next discharged by Carrier in May 2009 for violating Plant Rule 14 by being physically and verbally confrontational with her group leader, Arlene Florey, in a workplace incident. Initially, Hardin was suspended; but after investigating the matter further, Carrier converted the suspension to discharge. On Hardin's behalf, Local 1999 filed and processed two grievances challenging both the suspension and the discharge. In connection with the 2009 suspension and discharge grievances, Adcock conducted an investigation with Local 1999 officials. Adcock interviewed Hardin as part of the investigation. During this investigation, a statement was received from Florey. Written statements from three other witnesses corroborated Carrier's conclusion that Hardin was the aggressor against Florey.

Adcock and Hardin participated in the third step hearing between Carrier and Local Union 1999 on May 28, 2009. Adcock received a letter, dated June 4, 2009 from Carrier's Senior Labor Manager Pendleton advising that Carrier had reviewed the evidence, but concluded that there was no evidence that supported Hardin. With regard to Hardin, Pendleton further advised, "Her threats and abusive language will not be tolerated. The fact that the grievant was reinstated less than a year ago leads the Company to believe that this is not a good fit." Pendleton indicated that the termination stood and the grievance was denied. After the Step Three hearing, Adcock evaluated the merits of the 2009 discharge grievance to decide whether there were grounds to pursue the grievance to arbitration. Adcock weighed Carrier's considered the evidence and decided that the 2009 discharge grievance did not have sufficient merit that would justify pursuing it to arbitration. Adcock's decision not to pursue the grievance was made in good faith based on the merits of the grievance. Hardin's race played no role in the decision. Adcock informed Carrier of the USW's decision to withdraw Hardin's 2009 discharge grievance by letter on July 17, 2009. Adcock, by letter on July 19, 2009, informed Hardin of the USW's decision not to arbitrate the May 2009 termination. Adcock also discussed the decision not to arbitrate her May 2009 discharge with Hardin. During that discussion, she never referenced any Equal Employment Opportunity Commission ("EEOC") charge that she had previously filed against Carrier. She also did not reference her September 2008 reinstatement agreement with Carrier.

On or around September 16, 2009, Hardin filed EEOC charge number 470-2009-03740 against Local 1999. Prior to that time, she had not filed an EEOC charge against Local 1999 or the USW for any reason. Hardin specifically alleged in her charge that the Local Union failed to properly represent her in connection with her May 2009 termination on the basis of her race and in retaliation for filing previous discrimination complaints. She alleged that the discrimination took place between May 24, 2009 and June 19, 2009. The EEOC issued a Dismissal and Notice of Right to Sue on June 7, 2010.

**C. Analysis**

Hardin alleges that the Local Union violated Title VII by not arbitrating a grievance over her August 24, 2007 termination by Carrier, and after she was reinstated by Carrier in September of 2008, by not arbitrating her subsequent May 19, 2009 termination. She also claims that the Local Union retaliated against her in violation of Title VII by refusing to arbitrate the May 2009 discharge because she had been previously reinstated in September of 2008 by Carrier.

*Hardin's 2007 Discharge*

Any claim with regard to Hardin's termination in 2007 is time-barred and must be dismissed. Title VII provides that a charge of discrimination must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). A failure to submit a timely charge with the EEOC precludes the employee from bringing a claim in court under Title VII. *Id.* at § 2000e-5(f)(1). The filing of such a charge within the statutory time limit

is a jurisdictional prerequisite to the commencement of a Title VII action in the district court. *Bugg v. Int'l Union of Allied Industrial Workers*, 674 F.2d 595, 598-599 (7th Cir. 1982).

On September 24, 2007, Adcock advised Hardin in writing that the Local Union was not arbitrating the grievance over her August 24, 2007 termination. Hardin filed her first EEOC charge on September 16, 2009, more than 300 days later. In addition, this EEOC charge said nothing about the 2007 termination. Because Hard did not file a timely EEOC charge, or any EEOC charge, with respect to the 2007 termination, the Local Union is entitled to summary judgment on any claims Hardin has with respect to the 2007 termination.

*Hardin's 2009 Suspension and Termination*

Hardin alleges that the Local Union discriminated and retaliated against her with respect to her 2009 suspension and termination. To successfully oppose the Local Union=s motion for summary judgment with respect to her 2009 suspension and termination, Hardin must either produce direct evidence of discrimination or retaliation or survive the burden-shifting test established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Direct evidence is evidence that, if believed by the trier-of-fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003). In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal quotation omitted). There is no direct evidence that the Union discriminated against her because of her race or retaliated against her. Accordingly, the burden-shifting method of analysis will be applied in this case. Under the indirect method of proof, Hardin must establish (1) the employer violated its collective bargaining agreement with the union; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) there is evidence of animus against plaintiff based on her race or on a retaliatory motive. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866-867 (7th Cir. 1997); *Johnson v. Artim Transp. System, Inc.*, 826 F.2d 538, 542 (7th Cir. 1987).

Hardin's claims fail with respect to her race discrimination allegations. First, Hardin herself testifies that the Union did not discriminate against her because of her race. "I'm not saying the Union discriminated against me at all, but I'm saying that they did not represent me." Hardin's claims also fail the second prong of the burden-shifting analysis – that the Union breached its duty of fair representation. A union breaches its duty of fair representation when its decision not to pursue a grievance is arbitrary or based on discriminatory or bad faith motives. *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 867 (7th Cir. 1997). The Local Union has shown that his decision not to pursue her grievances to arbitration was based on his own evaluation of the merits of the grievance, not on any racial animus. Hardin has not come forward with contrary evidence. In fact Hardin testified at her deposition "I'm not saying the Union discriminated against me at all." In addition, when asked if she was alleging that the Local Union did not properly represent her and

retaliated against her because of her race. She responded, "No, not because of my race."

Hardin's claims also fail with respect to her allegations of retaliation. Hardin has suggested that the Local Union retaliated against her because she was able to get her job back without the assistance of the Local Union. Again, this claim fails the second step of the burden-shifting analysis. Adcock has shown that his decision not to arbitrate Hardin's termination from Carrier was a good faith one based on the merits of the grievance. Hardin has come forward with no contrary evidence. The Local Union is therefore entitled to summary judgment on Hardin's claims related to her 2009 suspension and termination.

## II. Conclusion

"Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993). Here, Hardin's claims are not supported by evidence that establishes a *prima facie* case of racial discrimination or retaliation. Accordingly, the Local Union's motion for summary judgment [51] is **granted**. This ruling resolves all claims against all parties. Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: 09/26/2012

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Tonyia Hardin
3639 N. Illinois Street
Indianapolis, IN 46208